1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11   RONALD EDWARD MONTIJO, SR.,        )   Civil No.08cv88-WQH(NLS)
                                        )
12                       Petitioner,    )   **REPORT & RECOMMENDATION OF**
                                        )   **U.S. MAGISTRATE JUDGE RE:**
13   v.                                 )   **PETITION FOR WRIT OF HABEAS**
                                        )   **CORPUS**
14   THOMAS HOFFMAN, Director,          )
                                        )
15                       Respondents.   )   [Doc. No. 2]
     _____    )

16        Ronald Edward Montijo, Sr. ("Petitioner") is a California prisoner serving an aggregate term of

17   four years for preparing false documentary evidence in violation of California Penal Code section 134.

18   He has filed a Petition for Writ of Habeas Corpus ("petition") pursuant to 28 U.S.C. § 2254, arguing

19   insufficiency of the evidence to support his conviction and unconstitutional vagueness of the statute

20   under which he was convicted [Doc. No. 2].  Respondent filed an answer to the petition and supporting

21   documents [Doc. No. 7].  Petitioner did not file a traverse.  After a thorough review, the Court finds that

22   Petitioner is not entitled to the relief requested and **RECOMMENDS** that his petition be **DENIED**.

23                                     B<small>ACKGROUND</small>

24        The following factual background is derived from the appellate court opinion denying

25   Petitioner's habeas petition.  [*Lodgment No. 6*, *People v. Ronald Edward Montijo, Sr.*, No. D046391,

26   slip op. at 2-11 (Cal.Ct.App. June 15, 2006).]  This Court gives deference to state court findings of fact.

27   *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to factual findings of both

28   state trial and appellate courts).

                                          1                                         08cv88

Petitioner is a former drug addict with six prior felony convictions, including a manslaughter conviction and multiple drug convictions. As a result of these convictions, Petitioner was incarcerated at various times between 1980 and 1996. After his release from prison in 1996, Petitioner rehabilitated and became a drug and alcohol counselor. In 2003, Petitioner worked at the Occupational and Health Services ("OHS") office in San Marcos, California, where he provided individual and group counseling, and assisted convicted DUI offenders with the completion of their court-ordered OHS programs. Petitioner was assigned as an individual and group counselor to Caroline Carmichael after she pled guilty to a DUI charge and was ordered to complete an eighteen month counseling program offered by OHS. The program included group and individual counseling with Petitioner, as well as attendance at Alcohol Anonymous ("AA") meetings.

Carmichael did not attend the required AA meetings. Petitioner counseled her about her absences initially, explaining that she needed to attend the meetings to complete the program. However, Petitioner then started forging her AA attendance record to show that Carmichael was attending the meetings as required by the program. Petitioner advised Carmichael that if she didn't compensate him for falsifying the records, she would return to court and be sent to jail. Carmichael paid Petitioner $200 the first time he forged her attendance record. At every subsequent individual counseling session with Petitioner, he asked for money in exchange for falsifying her AA attendance records. After months had gone by and the situation continued, Carmichael told Petitioner that she could no longer afford to pay him. Petitioner indicated that there were other ways in which Carmichael could compensate him. Carmichael assumed he meant sexual favors because he touched her as he made the suggestion.

At every individual counseling session thereafter, Petitioner in some way touched Carmichael and/or made lewd comments. It started as hugging, and escalated to groping inappropriate private areas through her clothing. Carmichael allowed it to continue because she wanted to complete the eighteen month program successfully. Carmichael also missed group counseling sessions, for which Petitioner forged her attendance records. In September 2004, Carmichael completed the portion of the program that required Petitioner to be her counselor. Petitioner falsified her records to reflect that she attended the required 52 AA meetings and all required group counseling sessions. She attended an exit interview conducted by Petitioner where she signed her name to the forged documentation. Petitioner then asked

08cv88

for directions to her house and indicated he would be there on Tuesday.

Carmichael gave Petitioner directions to her home, but became scared and called the Sheriff's department, as well as the OHS office, to report Petitioner's actions during the period of time he served as her counselor.  The Sheriff's office conducted surveillance on Petitioner the Tuesday he planned to go to Carmichael's house.  Officers observed him driving on the freeway erratically.  Once Petitioner exited the freeway and came to a stop, detectives detained him and informed him that he was under arrest for sexual assault.  Petitioner spoke to the detectives on the scene, stating that "she" was lying, and that "she" was a drunk and a drug addict.  At the police station, Petitioner waived his *Miranda* rights and spoke with the detectives.  He identified Carmichael as his accuser.  Petitioner denied falsifying her OHS program records.  After initial denials, Petitioner admitted that something had gone on between him and Carmichael during her exit interview.  Petitioner claimed that she had offered to be his "woman on the side" if he would continue to be her counselor.  He claimed he told her no, but that he and Carmichael flirted with each other.

Petitioner testified in his own defense at trial.  He disputed Carmichael's version of events, and claimed that to his knowledge Carmichael attended all required AA meetings and group counseling sessions because she presented him with documentation of her participation.  He claimed that in September 2004 Carmichael offered to pay him or provide sexual favors if he helped her get out of her remaining requirements for the program.  Petitioner denied falsifying any documents or records on Carmichael's behalf.

On January 14, 2005, a jury found Petitioner guilty of preparing false documentary evidence for fraudulent purposes, in violation of California Penal Code section 134.  [*Lodgment No. 1*, 145.] Petitioner waived his right to a jury trial and admitted a "strike prior" under California law.  [*Lodgment No. 2*, 633.]  On March 11, 2005, Petitioner was sentenced to a total term of four years incarceration, consisting of the statutorily preferred middle term of two years, doubled under California's three strikes law.  [*Id*. at 830.]

Petitioner appealed his conviction, raising seven claims: (1) insufficient evidence to support the conviction; (2) conviction pursuant to an unconstitutionally vague statute; (3) trial court error by failing to sua sponte instruct the jury on the definitions of various terms used in the statute; (4) trial court error

08cv88

1  by instructing the jury under CALJIC No. 2.01 instead of CALJIC No. 2.02; (5) trial court error by

2  instructing the jury under CALJIC No. 2.62; (6) abuse of the trial court's discretion by denying his

3  motion to strike his prior strike conviction at sentencing; and (7) cumulative error warranting reversal of

4  the judgment. [*Lodgment No. 6*, 2.] The state appellate court rejected these claims and affirmed

5  Petitioner's conviction and sentence. [*Id*. at 24.] Petitioner subsequently filed a petition for review in

6  the California Supreme Court, which was denied without comment on September 27, 2006. [*Lodgment*

7  *No. 8*.]

8      On December 27, 2007, Petitioner filed the pending federal petition, raising two claims: (1)

9  insufficiency of the evidence at trial to prove intent to produce a false record or to prove actual

10  production of a false record; and (2) violation of his due process rights based on his conviction pursuant

11  to an unconstitutionally vague statute. [*Petition*, 9.] Respondent has answered the Petition, and argues

12  that the California Court of Appeal reasonably rejected Petitioner's claims. [*Answer*, 9.]

13                                    <u>**ANALYSIS**</u>

14      This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act

15  of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will

16  not be granted with respect to any claim adjudicated on the merits by the state court unless that

17  adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of

18  clearly established federal law; or (2) resulted in a decision that was based on an unreasonable

19  determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C.

20  § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). A federal habeas court may grant relief under the

21  "contrary to" clause if the state court applied a rule different from the governing law set forth in

22  Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially

23  indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the

24  "unreasonable application" clause if the state court correctly identified the governing legal principle

25  from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case.

26  *Id.* Additionally, the state court's factual determinations are presumed correct, and the petitioner carries

27  the burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

28  / / /

1    **1.    Claim One: Sufficiency of the Evidence**

2    Petitioner first contends that his federal Constitutional right to due process was violated because

3    there was insufficient evidence to support his conviction.  [*Petition*, 9.]  Specifically, Petitioner argues

4    that the prosecution failed to put on sufficient evidence at trial to prove he possessed the intent to

5    produce false documentary evidence at a trial, proceeding, or inquiry authorized by law, a required

6    element of the charge.[1]  [*Id*]  Respondent contends that habeas relief is unavailable as to this claim

7    because the appellate court's adjudication of the claim was neither contrary to nor involved an

8    unreasonable application of the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  [*Answer*,

9    11-13.]

10    Petitioner raised this claim on direct appeal.  [*See Lodgment No. 3*; *Lodgment No. 6*.]  The

11    appellate court rejected Petitioner's argument,[2] concluding that sufficient evidence supported

12    Petitioner's conviction for preparing false records.  [*Lodgment No. 6*, 12-13.]  Specifically, the appellate

13    court stated:

14    "There is sufficient evidence from which the jury could find that Montijo prepared
the false documents stating that Carmichael had complied with the terms of her probation

15    for a fraudulent or deceitful purpose.  Carmichael testified that she was threatened, both at
orientation and by Montijo, that if she did not attend the required meetings, she would be

16    kicked out of the program, would be sent back to court, and would go to jail.  The evidence
shows that Montijo put false information on the documents tracking her compliance for the

17    purpose of defrauding the court with a representation that Carmichael *had* complied with the
court-ordered program. [emphasis in original]

18
Likewise, there is sufficient evidence to demonstrate that Montijo intended the false

19    documents to be produced 'upon any trial, proceeding, or inquiry.'  The program Carmichael
attended was a condition of her probation.  Montijo was responsible for keeping track of

20    Carmichael's compliance with the program.  If there was a lack of compliance, OHS would
notify the court.  Similarly, OHS would have to provide the court with proof that Carmichael

21    had successfully completed the program.  This could only be done based upon Montijo's
false recording and reporting of Carmichael's compliance with the program.  Montijo's

22    understanding that what he recorded on Carmichael's compliance documents determined

23

24    [1] **Preparing False Documentary Evidence**:  "Every person guilty of preparing any false or antedated
book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be

25    produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceedings, or inquiry
whatever, authorized by law, is guilty of felony."  CA Penal Code § 134.

26    [2] Where, as here, the highest state court to consider Petitioner's claims issued a summary opinion which
does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to

27    reach the merits.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Bains v. Cambra*, 204 F.3d 964, 970-71,
973-78 (9th Cir. 2000).  In this case, the last state court opinion to address the merits of Petitioner's claim is the

28    opinion of the California Court of Appeal.  [*Lodgment No. 6*.]

1

2

> whether or not she would successfully complete that term of probation is sufficient to show his intent that the documents would be produced 'upon any trial, proceeding, or inquiry whatever.' Substantial evidence supports Montijo's conviction."

3    [*Lodgment No. 6*, 12-13.]

4        The clearly established federal law regarding sufficiency of the evidence claims in the criminal

5    context is set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In *Jackson*, the Supreme Court

6    held that the Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to

7    habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of

8    fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324. In making

9    this determination, habeas courts must respect the province of the jury to determine the credibility of

10   witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming

11   the jury resolved all conflicts in a manner that supports the verdict. *Id.* at 319. Once a state court fact

12   finder has found a defendant guilty, federal habeas courts must consider the evidence "in the light most

13   favorable to the prosecution." *Id.* Federal habeas courts must also analyze *Jackson* claims "with

14   explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324

15   n.16.

16       The Ninth Circuit has recently stated that: "After AEDPA, we apply the standards of *Jackson*

17   with an additional layer of deference." *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005). In *Allen*,

18   the Ninth Circuit first reviewed the standard of review applied by the state appellate court to a

19   sufficiency of the evidence claim, and found that although the state court did not cite to the relevant

20   federal case law, "such a citation is not required 'so long as neither the reasoning nor the result of the

21   state-court decision contradicts' Supreme Court precedent." *See id.* at 1274 n.12, quoting *Early v.*

22   *Packer*, 537 U.S. 3, 8 (2002). The state appellate court here applied the *Jackson* standard and this Court

23   must determine whether the state appellate court opinion here "reflected an unreasonable application of

24   *Jackson* . . . to the facts of this case." *Allen*, 408 F.3d at 1275.

25       Petitioner argues that the prosecution failed to produce any probative evidence at trial that he

26   falsified Carmichael's OHS program records with the intent to have the records produced at a "trial,

27   proceeding, or inquiry." [*Petition*, 9.] A review of the record demonstrates that Petitioner's claim is

28   without merit. The prosecution presented Carmichael as their primary witness at trial. She testified that

1   Petitioner prepared the false records of her completion of the OHS program requirements, in return for

2   which she paid him because he told her that without the falsified documentation she could be kicked out

3   of the program, sent back to court, and possibly go to jail. [*Lodgment No. 2*, 50.] Carmichael testified

4   at length regarding Petitioner's threats that without OHS records chronicling her successful completion

5   of all the program requirements she would have to return to court for failing to meet the terms of her

6   probation. Carmichael told the jury that she complied with Petitioner's monetary demands and sexual

7   advances for months and remained silent because Petitioner constantly threatened her with the legal

8   consequences if he chose to stop forging her participation records. [*Id.* at 52.]

9          Carmichael's former co-worker and friend, Sandy LaPrade, corroborated her testimony.

10  LaPrade testified that Carmichael confided in her about Petitioner's behavior, but was afraid to tell

11  anyone else or report it to the police because she didn't want to go to jail. [*Id.* at 217-18.] The

12  prosecution also called Adelina Olmos as a witness. [*Id.* at 227.] Olmos met and became friendly with

13  Carmichael during their participation in the OHS program. They were both assigned to Petitioner's

14  group and individual counseling sessions. [*Id.* at 228.] Olmos testified that Petitioner made sexual

15  comments to her during one of their individual counseling sessions. [*Id.* at 231.] He also warned Olmos

16  during group and face-to-face sessions that if she didn't complete the program requirements she could

17  be dismissed from the program, sent back to court, and possibly go to jail. [*Id.* at 246.] Detective

18  Daniel Deese, the arresting officer in the case, testified regarding Petitioner's post-*Miranda* admissions

19  in the police station. [*Id.* at 270.] Specifically, Petitioner told the detectives that he had called

20  Carmichael fifteen times on the day he was arrested because he allegedly was concerned there was a

21  problem or she was in trouble when administrators came and pulled her file from his case files.

22         Petitioner testified at trial on his own behalf. [*Id.* at 342.] On direct examination, Petitioner

23  stated that he documented Carmichael's performance in the OHS program by keeping a case file and

24  using a DUI tracking sheet. [*Id.* at 353.] He testified regarding Carmichael's absences, her three

25  suspensions from the program, and her completion of multiple phases of the program. [*Id.* at 354.] On

26  cross examination, Petitioner testified in detail regarding his duty as an OHS counselor to keep

27  documentation of his assigned clients' participation in the program:

28  / / /

7

[Prosecutor]

Q:    What is the purpose of the documentation?

[Petitioner]

A:    To ensure the client completes the program.

Q:    What if the client doesn't complete the program?

A:    Then they are dismissed from the program and referred back to court.

Q:    And referred back to the court by the OHS program administrators, correct?

A:    Correct.

Q:    And that comes as a basis of your telling your supervisors this is a client that I have who is not in compliance; is that correct?

A:    No.

Q:    How do OHS administrators find out if somebody is not in compliance?

A:    If they had broken any of the certain rules that apply to dismissal, we dismiss them and turn in the file.

Q:    Okay. Who dismisses them?

A:    The counselor that's in charge of them.

( . . . )

Q:    All right.  So once somebody gets dismissed based on the files that you create as a counselor they get sent back to court?

A:    Uh-huh.

Q:    Correct?

A:    Yes.

[*Id*. at 392-93; 397.]

    The recurring theme throughout all of the testimony at Petitioner's trial was the significance of the OHS records due to their classification as official documentation of a criminal defendant's mandatory participation in a court-ordered program.  Carmichael and her co-participant, Olmos, both believed that Petitioner kept detailed records of their program participation for the primary purpose of using the records to inform the court either of their successful completion at the end of their probation period, or to advise the court of their non-compliance.  Petitioner himself testified that client case files

1   were kept by OHS counselors to track program completion and to use as a basis for dismissal and return

2   of the client to court for a probation violation.  Based on this testimony, combined with evidence of

3   Petitioner's position at OHS and his reliance upon the records to manipulate and cajole Carmichael, the

4   prosecution presented sufficient evidence at trial that Petitioner falsified Carmichael's records with the

5   intent to produce them at a court proceeding (i.e., Carmichael's final probation hearing) or OHS

6   administrative inquiry as genuine documentation of Carmichael's successful participation in the

7   program.

8        A rational trier of fact could have relied on the facts and testimony above to support Petitioner's

9   conviction.  The appellate court relied on this same evidence to conclude that substantial evidence

10  supported Petitioner's conviction.  Such reliance does not appear to be "objectively unreasonable" or

11  speculative because these facts, taken in the light most favorable to the prosecution, support the

12  conviction for the charged crime.  Therefore, the state court decision did not contradict or unreasonably

13  apply "clearly established federal law" as determined by the United States Supreme Court and did not

14  rely on an unreasonable determination of facts.  The Court therefore **RECOMMENDS** that Petitioner's

15  first claim for habeas relief be **DENIED**.

16       **2.      Claim Two: Constitutionality of California Penal Code Section 134**

17       In his second ground for relief, Petitioner argues that California Penal Code section 134 fails to

18  provide adequate notice as to what conduct the statute prohibits, and therefore should be deemed void

19  for vagueness in violation of his Fourteenth Amendment due process rights.  [*Petition*, 9.]  Respondent

20  contends that the state appellate court employed the correct standard under *Kolender v. Lawson*, 461

21  U.S. 352, 357 (1983), in rejecting Petitioner's argument.

22       The California Court of Appeal rejected this claim on direct appeal, citing the standard set forth

23  by the Supreme Court in *Graynard v. City of Rockford*, 408 U.S. 104, 108 (1972), whether the

24  challenged statute provides "a person of ordinary intelligence" with a "reasonable opportunity to know

25  what is prohibited so that he may act accordingly."  The appellate court concluded that the California

26  legislature clearly intended for section 134 to prohibit the preparation of false evidence of any sort for

27  production at a full scale trial, as well as administrative hearings and inquiries and other court

28  proceedings, so long as the proceeding is authorized by the state legislature.  [*Lodgment No. 6*, 14-15.]

1    The appellate court also determined that section 134 was not unconstitutionally vague as applied in

2    Petitioner's case.  Specifically, the court held:

3        "Here, the falsified documents were to be used to determine Carmichael's compliance
         with a term of her probation.  Thus, they were to be used with regard to a formal court
4        proceeding, not an "inquiry" outside formal court process ( . . . ) Falsifying documents
         that track a probationer's compliance with a condition of probation is a serious matter
5        that any reasonable counselor would realize is both unethical and illegal, and which
         seriously harms the integrity of the court-ordered probation system."

6

7    [*Id.* at 15.]

8        Petitioner argues that section 134 is vague because under its terms "every document ever created

9    could be subject to CPC section 134 because any document could become the basis for a subsequent

10   court document."  Petitioner also claims that the appellate court decision encourages the arbitrary and

11   discriminatory enforcement of the statute.  [*Petition*, 9.]

12       It is a basic principle of due process that an enactment is void for vagueness if its prohibitions

13   are not clearly defined.  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  The

14   void-for-vagueness doctrine requires that a penal statute define the criminal offense with "sufficient

15   definiteness that ordinary people can understand what conduct is prohibited and in a manner that does

16   not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357

17   (1983).  "Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, . . .

18   the more important aspect of [the] vagueness doctrine is not actual notice, but the requirement that a

19   legislature establish minimal guidelines to govern law enforcement."  *Id.* (citation omitted).  If a statute

20   is not clear enough to guide citizens' lawful conduct and provide authorities with principles governing

21   enforcement, a defendant cannot be punished for violation.  *United States v. Kim*, 449 F.3d 933, 942 (9th

22   Cir. 2006).

23       California Penal Code section 134 provides: "Every person guilty of preparing any false or

24   ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it,

25   or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial,

26   proceeding, or inquiry whatever, authorized by law, is guilty of felony."

27       A statute will meet the certainty required by the Constitution if its language conveys sufficiently

28   definite warnings as to the proscribed conduct when measured by common understanding and practices.

1    *See Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993).  In a facial vagueness challenge, the court

2    must look to the plain language of the statute, as well as construe the statute as it has been interpreted by

3    the state courts.  *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 941-42 (9th Cir. 1997).  The

4    state appellate court reasonably determined that section 134 is not unconstitutionally vague.  An

5    ordinary person would understand that the statute prohibits a specific type of intentional behavior,

6    falsifying documentary evidence for the express purpose of presenting the sham documents at a court or

7    other authorized legal proceeding, or allowing someone to present the falsified documents on their

8    behalf, with the specific intent to deceive or defraud the proceeding.  The California legislature

9    fashioned the statute using straightforward language, sufficiently specific to indicate clearly the conduct

10   prohibited by the statute.  Other California Penal Code sections assist in defining key terms employed in

11   section 134.  For instance, section 8 clarifies the specific intent to defraud, a required element of section

12   134: "Whenever, by any of the provisions of this Code, an intent to defraud is required in order to

13   constitute any offense, it is sufficient if an intent appears to defraud any person, association, or body

14   politic or corporate,  whatever."  In addition, because the statute is clear as to the conduct prohibited, the

15   specific intent required, and the context in which the conduct is illegal, it establishes standards that

16   permit the police to enforce the law in a non-arbitrary, non-discriminatory manner.  The Court finds no

17   plausible reading of the statute that mandates, encourages, or even suggests that the police enforce the

18   prohibition in any other way than in a non-arbitrary or non-discriminatory manner.

19           The analysis does not end with the plain language of the statute, however.  Federal courts must

20   construe the statute as it has been interpreted by the state courts.  *Kolender*, 461 U.S. at 355 n. 4, 103

21   S.Ct. at 1857 n. 4; *McSherry v. Block*, 880 F.2d 1049, 1052 (9th Cir. 1989).  California case law

22   interpreting section 134 is sparse.  Several cases have reviewed the application of section 134 in specific

23   factual contexts, however this Court could not find a case that dealt directly with the issue of section

24   134's constitutionality, aside from the appellate court's unpublished opinion denying Petitioner's direct

25   appeal in this case.  *See, e.g., People v. Blaydon* (1957) 154 C.A.2d 817, 823 (forging signature of

26   witness to will); *People v. Laws* (1981) 120 C.A.3d 1022, 1028 (preparation of false receipt to show

27   compliance with probation restitution condition).

28           One California appellate court examined the statute thirty years ago, addressing the narrow

11

question of whether a grievance procedure hearing is a 'proceeding, or inquiry whatever, authorized by law,' and thus covered by section 134. *People v. Clark* (1977) 72 Cal.App.3d 80. The *Clark* court commented on section 134's purpose, stating that "interpretation of the Penal Code section shows that its objective is to prevent the fraudulent introduction of material in a proceeding under the authority of law. To apply the Penal Code section to inquiry proceedings is necessitated by the purpose of discouraging introduction of this material." The court concluded that the plain import of the term "authorized by law," as it refers to proceedings within section 134, includes proceedings and inquiries held pursuant to legislative authority, even though they occur outside a court of law. The court also determined that the meaning of the statute is unambiguous. *Id*. at 84-85.

This Court agrees with the California appellate courts' assessment that Penal Code section 134 is unambiguous on its face, and not void for vagueness in its application under the standard set forth by the United States Supreme Court in *Kolender v. Lawson*, 461 U.S. 352 (1983). Section 134 provides sufficient guidelines for citizens' conduct and to prevent arbitrary or discriminatory enforcement, as required under the *Kolender*. The statute is not unconstitutionally vague, and the state appellate court's decision in Petitioner's case was not contrary to or an unreasonable application of federal law. Accordingly, the Court **RECOMMENDS** that Petitioner's second claim for habeas relief be **DENIED**.

<u>CONCLUSION</u>

Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED**.

**IT IS ORDERED** that no later than ***August 22, 2008***, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed with the Court and served on all parties no later than ***August 29, 2008***. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: July 22, 2008

_____
Hon. Nita L. Stormes
U.S. Magistrate Judge

12